I must respectfully dissent.
The jury found that Dr. McCann had acted negligently, not that he intentionally or willfully caused the injury, and it awarded $2,000,000 in compensatory damages: $1,000,000 incompensatory damages to Mr. Lee's estate, and $1,000,000 to Ms. Lee for loss of consortium. The trial judge ordered a remittitur of the loss of consortium award to $250,000. There were no punitive damages awarded in this case; the damages of $2,000,000, reduced to $1,250,000, were intended solely to "compensate" Ms. Lee and to compensate Mr. Lee's estate for the loss or injury Mr. Lee suffered during the eight months he lived after the negligent surgery.
No evidence was produced regarding medical bills, out-of-pocket expenses, lost earnings, or loss of earning capacity, and no evidence indicated a wrongful death. However, evidence was produced to indicate that after the surgery Mr. Lee gained weight, appeared stronger, worked in his yard, and did not find it necessary to wear his colostomy belt. Mr. Lee had been retired for some years, and after the surgery he was not precluded from working or otherwise earning wages. Mr. Lee became sick on his 79th birthday and never recovered. He died from unrelated causes 8 months after the surgery.
It is clear that Dr. McCann was negligent. It is also clear that Mr. Lee lost the lower portion of his colon as a result of Dr. McCann's negligence. However, the jury awarded the plaintiff $1,000,000 for her husband's few days of pain and eight months of depression and embarrassment.
The jury demonstrated an inability to properly judge the law and the facts when it awarded Ms. Lee $1,000,000 for loss of consortium. This award was entirely intended to compensate Ms. Lee for the eight months of lost consortium — the loss of conjugal fellowship, company, society, co-operation, affection, and aid in every conjugal relation.
I do not discount this statement by the majority:
 " '[T]here is no yardstick by which compensatory damages for pain and mental suffering can be measured, and the ascertainment of the amount the plaintiff was due as compensation for these elements of damage must of necessity be left to the sound discretion of the jury, subject only to correction by the court for clear abuse or passionate exercise.' "
679 So.2d at 660 (quoting W.S. Fowler Rental Equipment Co. v.Skipper, 276 Ala. 593, 603, 165 So.2d 375 (1963)).
While this Court does not have "a yardstick" by which to measure compensatory damages for pain and mental suffering, we do have common sense and the common law. Assume that the jury had said that Ms. Lee was entitled to $100 million for pain and suffering in this case. Would this Court say: "[T]here is no yardstick by which compensatory damages for pain and mental suffering can be measured; therefore, we will not disturb the jury's judgment?" I sincerely hope not. Instead, the majority would probably look a little more closely at the second clause of thebSkipper test: "[The jury's verdict is] subject only to correction by the court for clear abuse or passionate exercise." How would this Court determine whether the jury has committed "a clear abuse or passionate exercise?" I submit that this Court would consider the common law and common sense.
If the Skipper test is good enough to be quoted for the "no yardstick" proposition, then this Court should also use that case as precedent in deciding whether the compensatory damages for pain and mental suffering are proper in this case. InSkipper, the plaintiff sued for damages for personal injuries he sustained when a pickup truck in which he was riding collided with the boom of *Page 662 
a dragline crane that had been left across an open ditch on a highway that was under construction by the defendant.
The plaintiff in Skipper lost substantial use of his right hand for the rest of his life, and he could no longer work in his trade, which required the use of his right hand. Moreover, the plaintiff was in a hospital for nine days and was unable to do any sort of work for six months. In addition, he incurred hospital and doctors' bills, and, finally, he sustained painful injury not only to his hand but over the rest of his body.
In light of all that evidence in Skipper, this Court held that an award of $10,000 was proper to compensate the plaintiff for his medical expenses, future lost wages, permanent partial loss of use of his right hand, and pain and mental suffering. This Court does not have a "yardstick," but we do have precedent.
I realize that the jury verdict in Skipper was returned in 1961, when $10,000 was worth more than it was in 1994, when the jury in our case made its award against Dr. McCann. However, the 1994 value of $10,000 in 1961 dollars is still not close to the value of $1,000,000 in 1994 dollars. Moreover, the $10,000 award in Skipper, unlike the award in today's case, was not only intended as compensation for pain and mental suffering, but also as compensation for Skipper's medical expenses, future lost wages, and permanent partial loss of use of his right hand. Therefore, the compensation awarded for pain and suffering in Skipper was less than $10,000, even in 1961 dollars.
Skipper shows how far this Court has gone in 30 years. Relatively mild pain and suffering used to be worth less than $10,000, and now it is worth $1,000,000. Has the quality of life increased exponentially in the last 30 years to the extent that pain and suffering that used to be worth less than $10,000 is now worth $1,000,000? The discrepancy in awards cannot be explained by the assertion that the injury or harm was different. All items of injury or harm are as different as the specific facts of each case; however, that should not prevent this Court from using precedent and common law to determine the reasonableness of awards to compensate for them. It is true that this Court does not have a yardstick with which to measure pain and mental suffering, but it is our duty as Justices to adhere to the common law and to use our common sense to step in when juries commit "clear abuse or passionate exercise."
I have a great deal of sympathy for the suffering the Lees went through during Mr. Lee's last eight months. It seems to me that the natural human reaction to this type of medical problem is an emotional revulsion. However, the suffering the Lees endured was limited to eight months. I believe that the jury engaged in "passionate exercise" when it awarded $1,000,000 for Mr. Lee's suffering and $1,000,000 for Ms. Lee's loss of consortium. I believe that the $1,000,000 award to the estate is too high, and that the award for loss of consortium, even after the remittitur, is still too high.
The majority of this Court, in adhering to the principle that "[t]here is no yardstick by which compensatory damages for pain and mental suffering can be measured," has abandoned its duty to follow precedent and to use its common sense to prevent a jury from committing "clear abuse or passionate exercise." Therefore, I must dissent.